HANSON BRIDGETT LLP
ROBERT A. McFARLANE, SBN 172650
rmcfarlane@hansonbridgett.com
RUSSELL C. PETERSEN, SBN 264245
russ.petersen@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366

Attorneys for Plaintiff
LEVI STRAUSS & CO.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVI STRAUSS & CO., <br><br> Plaintiff, <br><br> v. <br><br> AQUA DYNAMICS SYSTEMS, INC., <br><br> Defendant. | CASE NO. 15-4718 <br><br> **COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff Levi Strauss & Co. ("LS&Co."), by and through its undersigned attorneys, alleges as follows:

**NATURE OF THE ACTION**

1. LS&Co. seeks declaratory relief and an order against Aqua Dynamics Systems, Inc. ("Aqua Dynamics"), enjoining it from proceeding with the arbitration that it is attempting to commence with the Demand for Arbitration Before JAMS filed against LS&Co. on September 15, 2015, in San Francisco (the "Demand").

2. Aqua Dynamics purports to enforce a License & Development Agreement ("License Agreement") and the arbitration clause contained in that agreement, but it has no right to do so. First, Aqua Dynamics is not a signatory to the License Agreement and has no standing to enforce it, whether in arbitration, in the district court, or otherwise. Second, Aqua Dynamics waived whatever right it may at one time have had to enforce

the License Agreement's arbitration clause because it unduly delayed in bringing suit. Specifically, Aqua Dynamics alleges that LS&Co.'s breach of the License Agreement began in 2002, some 13 years before it filed its Demand.  Additionally, Aqua Dynamics effectively terminated the License Agreement in 2006, almost nine years before it filed its arbitration demand.  Aqua Dynamics' lengthy delay in filing the Demand to enforce its alleged rights under the License Agreement severely prejudices LS&Co.

**PARTIES**

3. Plaintiff Levi Strauss & Co., is a Delaware corporation with a principal place of business at 1155 Battery Street, San Francisco, CA 94111.

4. Upon information and belief, Defendant Aqua Dynamics Systems, Inc. is a Delaware corporation with its principal place of business at 330 South Maple, Adamsville, Tennessee.

**JURISDICTION AND VENUE**

5. This is an action for declaratory relief and to obtain a preliminary and permanent injunction pursuant to 28 U.S.C. §§ 2201, 2202, enjoining Aqua Dynamics from pursuing its claim against LS&Co. through arbitration, including the arbitration with JAMS that it attempts to commence through the Demand.

6. This Court has personal jurisdiction over Aqua Dynamics because Aqua Dynamics has alleged that it entered into the License Agreement with LS&Co., a California corporation headquartered in San Francisco, wherein the alleged License Agreement indicates that California law should be applied, Aqua Dynamics agreed that disputes over the License Agreement shall be arbitrated in San Francisco, California, and Aqua Dynamics has filed an arbitration in San Francisco against LS&Co.

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of the parties and the amount in controversy in the underlying arbitration exceeds $ 75,000.

8. Venue is proper under 28 USC § 1391(b) in this district because the Arbitration is venued in San Francisco, California, and therefore a substantial part of the

COMPLAINT FOR DECLARATORY RELIEF

events giving rise to this claim occurred in this judicial district.  By filing its Demand in San Francisco, California, Aqua Dynamics as consented to venue in this district.

## PROCEDURAL BACKGROUND

9. Aqua Dynamics filed the Arbitration Demand and JAMS assigned the proceeding Reference No. 1100082177 ("the Arbitration").  The Demand is attached as Exhibit A.  The Demand alleges that LS&Co. breached the License Agreement, which is attached as Exhibit B.  By agreement of the parties, the Arbitration is venued here in San Francisco.[1]

10. Several months prior to filing the Demand, Aqua Dynamics filed a Complaint against LS&Co. dated February 4, 2015, for breach of contract and patent infringement in the Southern District of New York ("the New York Action").  *See* Exhibit D.  It then filed a First Amended Complaint ("FAC") on August 17, 2015 which contained only a claim for breach of contract, thereby abandoning all claims for patent infringement.  *See* Exhibit E.  The Complaint and the FAC allege the same breach of the License Agreement that the Demand alleges.

11. Prior to filing this Complaint for Declaratory Relief, LS&Co. notified the Southern District of New York that it intended to file a Motion to Dismiss or Transfer the New York Action to the Northern District of California.  Pursuant to the Court's rules, a pre-motion conference with the presiding judge—Judge Carter—is scheduled for October 16, 2015.  The operative facts relevant to the alleged breach of contract have no relation to New York, and LS&Co. knows of no evidence or witnesses located in New York, and Aqua Dynamics has not identified a single fact, witness, or item of evidence linking the case with the Southern District of New York in either its complaint or its September 21,

---

[1] The parties agreed that any arbitration brought under the License Agreement would be venued in San Francisco through an Amendment executed on August 17, 2015.  The Amendment addressed *solely* the venue of any arbitration, and LS&Co. specifically reserved its right to assert that the case was not subject to arbitration and specifically preserved all of its claims, defenses, and counterclaims.  *See* Exhibit C.

2015, filing indicating that it would oppose LS&Co.'s motion to dismiss or transfer. In contrast, documentary evidence, numerous witnesses and the Arbitration itself are located here in San Francisco.

## FACTUAL BACKGROUND

12. Aqua Dynamics' Demand and FAC are improper attempts to resurrect a long-expired breach of contract claim that allegedly exists under the License Agreement and to recover damages for a breach of contract that allegedly commenced in 2002 – *some 13 years ago*.

13. The License Agreement[2] states that it was effective on July 31, 1993, and that it was entered between LS&Co., Earth Aire Corporation, and an individual named Eric Wasinger. Earth Aire represented that it was the owner of several patents related to processing denim with ozone, and it granted to LS&Co. a license to perform those processes. *See generally,* Exhibit B, License Agreement, Article III ("Grants"). The License Agreement also set forth a schedule of fees, royalties, and payment information by which LS&Co. was to remunerate Earth Aire. *See id.*, Article IV ("Fees, Royalties, and Payments"). The License Agreement allegedly executed between Earth Aire and LS&Co. also contained an agreement to arbitrate certain disputes arising thereunder. *See id.*, Article XV ("Arbitration").

14. In the New York Action, Aqua Dynamics alleges that "in or around 2002, Levi stopped issuing royalty statements and stopped paying royalties" that were due under the License Agreement and that "Levi was in continuing breach of the [License] Agreement for approximately nine years." *See* Exhibit D, Complaint, at ¶¶ 8-9; Exhibit E., First Amended Complaint, at ¶¶ 8-9. Thus, Aqua Dynamics' claim for breach of contract

---

[2] By describing or characterizing the substance of the document asserted by Aqua Dynamics as the License Agreement, LS&Co. does not admit (and expressly reserves the right to challenge) the legal effect of any of the quoted language, that the License is binding upon LS&Co. or enforceable by Aqua Dynamics or any other party, any fact regarding the License Agreement or the circumstances in which it was entered, or any fact pertaining to the performance or non-performance of any duties thereunder.

1  commenced in 2002 – **some 13 years before Aqua Dynamics filed the Demand**, and
2  Aqua Dynamics is now claiming damages based on LS&Co.'s allegedly continuing
3  breach of the License Agreement for a nine-year period ending in 2011, almost four years
4  before the demand was filed.

5        15.    With respect to the Demand, the sum total of Aqua Dynamics' allegations is
6  that this action involves a "breach of written contract for the payment of royalties," that it
7  seeks "arbitration to determine the amount of money owed for nonpayment of royalties,"
8  purportedly due under the License Agreement, and that the amount in controversy
9  allegedly exceeds $15 million.  *See* Exhibit A, Demand.

10       16.    Aqua Dynamics is not a signatory to the License Agreement and lacks
11 standing to initiate the Arbitration or to sue for damages under the contract at issue.  As
12 set forth above, the License Agreement was purportedly entered between Earth Aire and
13 LS&Co.  Sometime thereafter, an entity called Ozone Engineering, Design and Service
14 Corporation wrote to LS&Co., demanding payment from LS&Co., and claiming that it had
15 obtained by assignment rights under the License Agreement that were previously owned
16 by Earth Aire.  *See* Exhibit F (September 1, 2002).  Thereafter, an entity called Fiberzone
17 claimed to be the "current owner and licensor" of what appears to be the License
18 Agreement and demanded payment from LS&Co.  *See* Exhibit G (October 2, 2005).
19 Finally, Aqua Dynamics began to assert rights under the License Agreement in its name.
20 *See* Exhibit H (October 18, 2006).  Even though no less than four entities have claimed
21 Earth Aire's rights under the License Agreement, Aqua Dynamics has not offered any
22 evidence or documentation that it is, in fact, the owner of any rights that may exist under
23 the License Agreement.  Consequently, LS&Co. is informed and believes that Aqua
24 Dynamics does not have standing to assert any rights under the License Agreement.

25       17.    Even if Aqua Dynamics could produce documentation establishing a chain
26 of title that extends from Earth Aire to Ozone Engineering, Design and Service
27 Corporation, then to Fiberzone, and, finally, on to Aqua Dynamics (or that would
28 otherwise establish some other chain of title in such rights leading to Aqua Dynamics),

those purported assignments would still not convey to Aqua Dynamics the right to enforce rights under the License Agreement because **LS&Co. never approved of such transfers**. The License Agreement specifically provides that:

> **This agreement may be assigned by [Earth Aire] *with LS&CO's prior written consent,*** which consent shall not be unreasonably withheld.  Subject to such restrictions, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns."

*See* Exhibit B, License Agreement, ¶16.2 (emphasis added).  LS&Co. has identified no record that it ever consented, or was ever asked to consent, to the assignment of any rights under the License Agreement from Earth Aire to Ozone Engineering, Design and Service Corporation, or from Ozone Engineering, Design and Service Corporation to Fiberzone, from Fiberzone to Aqua Dynamics, or, in fact, to or from any other entity.  Consequently, any purported assignment of rights under the License Agreement, including any assignment to Aqua Dynamics, are not effective as to LS&Co., and Aqua Dynamics does not have the right to demand this arbitration or to enforce rights of its alleged predecessor Earth Aire under the Agreement.

18. Aqua Dynamics alleges a breach of contract that purportedly began in 2002 – some 13 years before Aqua Dynamics filed a demand for arbitration.  There can be no dispute that Aqua Dynamics (or its alleged Predecessors) sat on the purported rights that it seeks to now enforce for many years.

19. The statute of limitations for breach of a written contract in California is four years.  Moreover, the License Agreement required Earth Aire to make any claim that there were errors in LS&Co. royalty reports under the License Agreement within three years.  *See* Exhibit B, License Agreement, ¶4.4 (providing that claims of errors in royalty reporting by LS&Co. must be made within three years), ¶5.1 (requiring LS&Co. to maintain records of transactions under the agreement for three years).

20. Aqua Dynamics asserts a breach of contract that commenced in 2002 – more than 13 years before the Demand – and long before the applicable statute of limitations acts to bar the claim and long after the three year dispute resolution period

contemplated by the License Agreement.  Having waited such an extended period of time to seek redress for the alleged breach, Aqua Dynamics (or its predecessors) have waived the right to arbitrate.

21. If the passage of more than a decade since the alleged breach began was not sufficient on its own to establish Aqua Dynamics' waiver of any right to demand arbitration, Aqua Dynamics' waiver is established by its prior conduct.  The current litigation is not the first time that Aqua Dynamics or some other entity has accused LS&Co. of failing to provide royalty statements and of not paying royalties due under the License Agreement.  *See* Exhibits F, G, & H.  But Aqua Dynamics' last accusation, which was sent in 2006, in fact served to **terminate the contract**.  And Aqua Dynamics took no action between the contract termination in 2006 and the filing of the New York Action in 2015 to enforce its alleged rights under the agreement or to demand arbitration or judicial enforcement.

22. E. Bernard Blasingame, President of Aqua Dynamics Systems, Inc., wrote a letter on October 18, 2006, notifying LS&Co that it was in material breach of the agreement:

> Pursuant to paragraph 4.4 of the License Agreement, Levi Strauss and Company is to provide quarterly statement of royalties reflecting the number of Licensed Products Received and amount of royalty due.  The last quarterly statement of royalties we received was for the period of 8/31/03 through 11/30/03 and this letter is notification that you are in default of the Agreement. . . . ¶ In addition to the 30 day cure period for failure to report, it is very important that we receive correspondence as soon as possible. . .

*See* Exhibit H.  Thus, Aqua Dynamics' president asserted the very same claim against LS&Co. that is asserted in the Demand and the New York Action.  He asserted that the alleged failure to provide royalty statements and payments breached the License Agreement, ***and Aqua Dynamics then took no action to enforce the agreement or to timely demand an arbitration for more than eight years.***

23. Blasingame's letter informing LS&Co. of its alleged breach of the License Agreement and his notification that LS&Co. was in default of the Agreement served to terminate the contract, effective no later than November 17, 2006.  Paragraph 10.2 of the

License Agreement provides that:

> 10.2  Termination.  Subject to the other provisions of this ¶10.2, if either party shall commit any material breach of or default under this Agreement, the non-defaulting or non-breaching party shall have the right (but not the obligation) to terminate this Agreement, effective immediately upon written notice to the other party.  With respect to any breach or default which is by its nature remediable, the breaching or defaulting party shall have ninety (90) days, after the receipt of written notice thereof, to cure such breach or default; (a) provided, however, that any breach or default in payment of Quarterly Period royalties shall be cured within 10 (10) business days upon receipt of notice of default (b) and provided further that a party, may rely on the 90-day cure provisions stated herein only if that party shall have initiated, within thirty (30) days after the aforesaid notice, active steps designed to cure the breach of default and thereafter pursues cure diligently, or that party shall be deemed to have waived these cure provisions.  ***If such breach or default is not remedied by the end of the cure period, the Agreement shall terminate forthwith without additional notice***. [emphasis added] Notwithstanding anything to the contrary, herein, any termination shall be stayed during the pendency of an arbitration brought pursuant to Article XV

Pursuant to the Notice of Default Mr. Blasingame sent on October 18, 2006, and his invocation of the 30-day cure period, Paragraph 10.2 of the License Agreement served to terminate the contract 30 days later—November 17, 2006.

24.  Accordingly, Aqua Dynamics waited thirteen years after the alleged breach began, and almost nine years after terminating the contract, to file the Demand against LS&Co.  In the interim, relevant records have likely been lost, witnesses have died, memories of those involved in the transaction have faded, LS&Co. has changed its economic and business practices, and LS&Co.'s ability to effectively defend itself against these allegations has been significantly prejudiced.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Relief – Lack of Standing)**

25.  LS&Co. incorporates by reference the allegations contained in paragraphs 1 to 24 above.

26.  An actual controversy has arisen between LS&Co. and Aqua Dynamics relating to Aqua Dynamics' rights in the License Agreement and its ability commence the Arbitration against LS&Co. to enforce the License Agreement.  LS&Co. seeks a declaration of rights regarding this dispute.

27.  Aqua Dynamics is not a signatory to the Agreement.

28. Over the course of time, several parties, including Earth Aire Corporation, Fiberzone, Ozone Engineering Design and Service Corporation, and Aqua Dynamics have all asserted to LS&Co. that they are have rights to assert the benefits of the License Agreement.

29. The License Agreement requires LS&Co.'s consent for Earth Aire Corporation, or any subsequent assignee, to assign its rights in the License Agreement to any other party.

30. LS&Co. has no record that it ever provided, or was ever asked to provide, its consent to any assignment of Earth Aire Corporation's ownership or rights in the License Agreement.

31. LS&Co. is entitled to a declaration that Aqua Dynamics has no standing to assert any claim or request any relief related to the License Agreement, including the right to commence the Arbitration against LS&Co. for breach of the License Agreement.

32. A declaratory judgment is necessary in that Aqua Dynamics has filed and served a Demand for Arbitration Before JAMS based on its contention that Aqua Dynamics may enforce the arbitration clause at issue. Aqua Dynamics, however, does not have standing to enforce that arbitration clause because it was not a signatory to the License Agreement and LS&Co. never consented to the transfer of any rights under the License Agreement to Aqua Dynamics.

33. In addition to other relief, LS&Co. seeks preliminary and permanent injunctions enjoining Aqua Dynamics, and its agents, servants, employees and attorneys, from pursuing the claims against LS&Co. through the above-referenced arbitration. Immediate and irreparable harm will result if there relief sought herein is not granted, and LS&Co. has no adequate legal remedies.

## SECOND CLAIM FOR RELIEF

**(Declaratory Relief – Waiver)**

34. LS&Co. incorporates by reference the allegations contained in paragraphs 1 to 33 above.

35. An actual controversy has arisen between LS&Co. and Aqua Dynamics relating to Aqua Dynamics' rights under the License Agreement and Aqua Dynamics' ability commence an Arbitration against LS&Co. to enforce the License Agreement. LS&Co. seeks a declaration of rights regarding this dispute.

36. Aqua Dynamics alleges that LS&Co. breached the Agreement in beginning in or about 2002.

37. After LS&Co. received several letters from various parties demanding payment for the alleged breach, Aqua Dynamics sent LS&Co. a Notice of Default in 2006.

38. By operation of the License Agreement, the Notice of Default terminated the License Agreement in 2006.

39. Aqua Dynamics failed to demand arbitration for almost 13 years after the breach of the License Agreement allegedly commenced and did not take steps to enforce the Agreement, in arbitration or otherwise, for close to nine years after it effectively terminated the License Agreement.  Aqua Dynamics sat on whatever rights it has in the License Agreement until it filed an action against LS&Co. in the Southern District of New York in February, 2015, well more than a decade after the alleged breach began.

40. LS&Co. has been materially prejudiced by the long delay.

41. LS&Co. is entitled to a declaration that Aqua Dynamics waived its rights, if any, in the License Agreement including the right to enforce the License Agreement in arbitration.

42. A declaratory judgment is necessary in that Aqua Dynamics has filed and served a Demand for Arbitration Before JAMS based on its contention that Aqua Dynamics may, even though it took no action form many years, enforce the arbitration clause at issue through an arbitration before JAMS.  Aqua Dynamics, however, has waived whatever right it may have had to enforce the arbitration clause because of its long delay and the resulting prejudice to LS&Co.

43. In addition to other relief, LS&Co. seeks preliminary and permanent injunctions enjoining Aqua Dynamics, and its agents, servants, employees and attorneys,

from pursuing their claims against LS&Co. through the above-referenced arbitration. Immediate and irreparable harm will result if the relief sought herein is not granted, and LS&Co. has no adequate legal remedies.

## PRAYER FOR RELIEF

WHEREFORE, LS&Co. respectfully requests that this Court issue an order:

(1) declaring that Aqua Dynamics has no standing to enforce the License Agreement because it is not a party to the License Agreement;

(2) declaring that Aqua Dynamics has waived its rights, if any, to enforce the License Agreement in arbitration;

(3) enjoining Aqua Dynamics from pursuing its claims through arbitration, including the pending Arbitration, JAMS Reference No. 1100082177;

(4) holding that Aqua Dynamics' litigation against LS&Co. is frivolous;

(5) awarding LS&Co. its attorneys' fees, costs, and expenses incurred in defending against this litigation; and

(6) awarding LS&Co. such other and further relief that the Court deems just and proper.

DATED: October 13, 2015                    HANSON BRIDGETT LLP


By:        */s/ Robert A. McFarlane*
           ROBERT A. McFARLANE
           RUSSELL C. PETERSEN
           Attorneys for Plaintiff
           LEVI STRAUSS & CO.