UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVI STRAUSS & CO., | Case No. 15-cv-04718-WHO |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO CONFIRM, DENYING MOTION TO VACATE** |
| AQUA DYNAMICS SYSTEMS, INC., | |
| Defendant. | Re: Dkt. Nos. 101, 108, 116 |

Levi Strauss & Co ("LS&Co.") moves to confirm an arbitration award against defendant Aqua Dynamic Systems, Inc. ("Aqua"), secured through an arbitration before three panelists at JAMS. Aqua opposes and moves to vacate that award, arguing that under *Monster Energy Co. v. City Beverages, LLC*, 940 F.3d 1130 (9th Cir. 2019), *cert. denied,* No. 19-1333, 2020 WL 3492685 (U.S. June 29, 2020) ("*Monster Energy*"), because two of the JAMS arbitrators were undisclosed shareholders in JAMS and because JAMS engaged in undisclosed non-trivial business dealings with LS&Co. before the arbitration here, the arbitrators had "evident partiality" and the award should be vacated.

As explained below, *Monster Energy* does not require vacatur of the arbitration award. This case is distinguishable from *Monster Energy* because: (i) LS&Co. did not compel Aqua into arbitration and did not force arbitration before JAMS; and (ii) the dealings between LS&Co. and JAMS before the arbitration at issue here were trivial. There is no basis for a finding of evident partiality on the facts before me. I GRANT LS&Co.'s motion to confirm and DENY Aqua's motion to vacate.[1]

---

[1] The motions were set for hearing by Zoom webinar on July 15, 2020. As a result of technical difficulties, Aqua's counsel was unable to join the hearing, where I announced my tentative opinion but did not hear argument from LS&Co.'s counsel. Aqua asks me to set a "renewed oral argument" so that it can appear and argue the motions. Dkt. No. 116. That request is DENIED.

United States District Court
Northern District of California

**BACKGROUND**

The parties' underlying dispute relates to a 1993 Development and License Agreement ("License Agreement") between LS&Co. and Aqua's predecessor, Earth Aire Corporation ("EAC"). Declaration of Robert A. McFarlane ISO LS&Co. Mot. to Confirm ("McFarlane Decl.") [Dkt. No. 101] Exh. 1 at 2–4.[2] Aqua initiated litigation against LS&Co. in February 2015, by filing suit in the Southern District of New York, claiming breach of contract and alleged damages in excess of $30 million. Aqua also sought declaratory and injunctive relief to force LS&Co. to arbitrate Aqua's claims. McFarlane Decl., Exh. 3 at 1; McFarlane Decl., Exh. 5 at 3–4. The License Agreement specified that disputes would be resolved by the American Arbitration Association ("AAA") in Chicago. McFarlane Decl., Exh. 2 ¶15.2. Aqua objected to the use of AAA, and the parties amended the arbitration provision in the License Agreement (the "Amended Arbitration Agreement") to use JAMS if Aqua pursued arbitration. McFarlane Decl., Exh. 8 at 1, 3; McFarlane Decl., Exhs. 9 and 10. The Amended Arbitration Agreement stipulated that LS&Co. "reserved the right to seek a court order that Aqua had waived its right to arbitrate or to otherwise challenge or enjoin the institution of any arbitration." McFarlane Decl., Exh. 9.

Aqua then filed its Demand for Arbitration before JAMS, asserting a claim for "[b]reach of written contract for the payment of royalties . . . seeking more than $15 million in damages." McFarlane Decl., Exh. 11 at 1–2. For the JAMS arbitration panel ("Panel"), LS&Co. chose Judge James Ware (Ret.), and Aqua chose Judge Wayne Brazil (Ret.). McFarlane Decl., Exh. 13 at 2; McFarlane Decl., Exh. 14 at 1. JAMS formally appointed Judges Ware and Brazil as arbitrators on January 26, 2016, and provided the parties with a set of disclosures regarding the judges' prior or pending cases involving the parties, counsel, or counsel's firms for a five-year period preceding the arbitration. McFarlane Decl., Exh. 15 at 1, 3–24. Included in these disclosures was that Judge Ware was the mediator in one LS&Co. matter in 2014, *Icon Laser Solutions v. Levi Strauss &*

---

This matter is appropriate for resolution on the papers.

[2] A more extensive discussion of the background and prior agreements between the parties is included in my October 2016 Order granting Aqua's motion to compel arbitration. Dkt. No. 59.

*Company.*  McFarlane Decl., Exh. 15 at 17.  The disclosures did not indicate that Judges Ware and Brazil were shareholders in JAMS.  JAMS appointed Alexander "Lex" Brainerd as the Chair of the Panel on February 23, 2016, and provided disclosures to the parties regarding Brainerd's prior or pending matters with JAMS.  McFarlane Decl., Exh. 16 at 1, 3–14.  Aqua did not object to the appointment of any of these arbitrators nor did it request further information regarding any of the prior matters identified in the disclosures.

On January 4, 2016, LS&Co. filed a declaratory judgment action in this Court, "seeking to enjoin the arbitral proceeding and to have the dispute adjudicated in federal court."  Amended Complaint [Dkt. No. 22] ¶1.  Aqua moved to dismiss the action for lack of subject matter jurisdiction, or in the alternative, to have the action dismissed or stayed pending the arbitration before JAMS.  Aqua's Motion to Dismiss [Dkt. No. 30] at 1–2.  After determining that I had subject matter jurisdiction over the action, I stayed the JAMS arbitration and permitted discovery directed to Aqua's standing to enforce the License Agreement's arbitration provision.  *See* Order Denying Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the Alternative, to Dismiss or Stay Pending Arbitration. Dkt. No. 37.  After completion of foundational discovery, Aqua renewed its motion to compel arbitration, which I granted on October 18, 2016.  *See* Order Granting Motion to Compel Arbitration. Dkt. No. 59.

The parties proceeded with the arbitration before JAMS, and after briefing and a hearing, a majority of the Panel consisting of Judge Brazil and Mr. Brainerd issued an opinion on November 20, 2018, that "all of [Aqua's] claims asserted in this arbitration, with the exception of Aqua's claim for breach of the confidentiality provisions of the [License Agreement], are barred by the statute of limitations," and "grant[ing] Levi's Motion for Summary Disposition as to all claims except Aqua's claim for breach of the confidentiality provision of [the License Agreement]."  McFarlane Decl., Exh. 1 at 22, 29.  The Panel majority also found that it had no jurisdiction over Aqua's claim for patent infringement because it is not a controversy that arises out of the License Agreement.  *Id.* at 28–29.[3]  After further briefing and a second hearing, the Panel unanimously

---

[3] Judge Ware dissented from the first opinion issued by the Panel.  McFarlane Decl., Exh. 1 at 30.

United States District Court
Northern District of California

United States District Court
Northern District of California

found in a decision, dated August 15, 2019, that Aqua's claim for breach of the confidentiality

provision of the License Agreement was also barred by the statute of limitations.  *Id.* at 60.  Aqua

argued that LS&Co.'s conduct during the arbitration proceedings waived LS&Co.'s right to

contest the Panel's jurisdiction to hear the patent infringement claim.  *Id.* at 40.  On this issue, the

Panel unanimously found that it had no jurisdiction over the patent infringement claim and that

LS&Co. had not waived its right to contest arbitrability of the patent infringement claim.  *Id.* at 60.

After the second opinion was issued, and while the issue of costs was still pending before

the Panel, Aqua asked the Panel to stay the issuance of a Final Award, arguing that in light of the

Ninth Circuit's recent ruling in *Monster Energy Company v. City Beverages, LLC*, 940 F.3d 1130

(9th Cir. 2019), *cert. denied,* No. 19-1333, 2020 WL 3492685 (U.S. June 29, 2020), the Panel

decisions should be vacated.  McFarlane Decl., Exh. 34.  Following the release of the *Monster

Energy* decision, but after the Panel here had issued its two substantive decisions, JAMS provided

additional disclosures for Judges Ware and Brazil.  The supplemental disclosures informed the

parties that Judges Ware and Brazil were:  (i) "owner panelist[s] of JAMS" and "have an equal

share ownership interest" with other owner panelists; (ii) that they "have never received a profit

distribution of more than .1% of JAMS total revenue in a given year"; and (iii) that they were "not

privy to information regarding the number of cases or revenue related to cases assigned to other

panelists," and as owners they were "not informed about how [] profit distribution is impacted by

any particular client, lawyer or law firm and [they] do not earn credit for the creation or retention

of customer relationships."  McFarlane Decl., Exhs. 39 and 40.  JAMS also disclosed that from

December 23, 2010 through November 1, 2019, LS&Co. had a total of six mediations and one

"closed court reference" handled by JAMS.  McFarlane Decl., Exh. 41 at 6, Exh. 42 at 8, Exh. 43

at 2.

After considering letter briefs from the parties on *Monster Energy* as well as the nature of

the information provided in JAMS' supplemental disclosures, the Panel determined that "a stay

[was] not necessary or required," and indicated that it would "issue a Final Award in due course."

McFarlane Decl., Exh. 38.  On May 1, 2020, the Panel issued a Corrected Final Award in favor of

LS&Co., awarding "it costs in the amount of $186,388.92."  McFarlane Decl., Exh. 1 at 11.

LS&Co. filed its Motion to Confirm the Arbitration Award on May 15, 2020.  On June 12, 2020,

Aqua filed its Opposition to LS&Co.'s motion, and also a Motion to Vacate the Arbitration

Award.[4]

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") obligates courts to grant a motion to confirm an

arbitration award with limited exceptions.  *See* 9 U.S.C. § 9.  An arbitration award may be

vacated:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

"The burden of establishing grounds for vacating an arbitration award is on the party

seeking it."  *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010)

(internal citation omitted).  In the Ninth Circuit, "the legal standard for evident partiality is

whether there are facts showing a reasonable impression of partiality."  *New Regency Prods., Inc.*

*v. Nippon Herald Films, Inc.*, 501 F.3d 1101, 1106 (9th Cir. 2007) (internal citation and quotation

marks omitted).[5]

---

[4] LS&Co. objects to Aqua's motion to vacate on the grounds that it was filed and noticed for a hearing on less than the 35 days required by the Civil Local Rules and argues that the motion to vacate is simply a procedural device to allow Aqua another set of briefs.  LS&Co.'s Oppo. to Mot. to Vacate [Dkt. No. 111] at 2–3.  However, as the motion to vacate rests only on the evident partiality issue that was raised in LS&Co.'s own motion to confirm I will consider Aqua's motion on its merits, although having a "carbon copy" set of briefs as Aqua itself characterizes its motion is not useful.  Aqua's Reply ISO Mot. to Vacate [Dkt. No. 112] at 2.

[5] This is different from the standard used in other circuits, where "[e]vident partiality may be found only where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration."  *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 64 (2d Cir. 2012) (internal citation and quotation marks omitted); *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 645 (6th Cir. 2005) (same); *ANR Coal Co. v. Cogentrix of N. Carolina, Inc.*, 173 F.3d 493, 500 (4th Cir. 1999) (same).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The Ninth Circuit recently addressed "evident partiality" in *Monster Energy Company v.*

2    *City Beverages, LLC*, 940 F.3d 1130 (9th Cir. 2019), *cert. denied*, No. 19-1333, 2020 WL

3    3492685 (U.S. June 29, 2020), specifically addressing undisclosed ownership interests in JAMS

4    by JAMS arbitrators and one side's undisclosed prior matters handled by JAMS.  In *Monster*

5    *Energy*, the arbitrator disclosed to the parties through a form disclosure that he had an economic

6    interest in the overall financial success of JAMS, but he did not disclose that he was a co-owner of

7    JAMS.  *Monster Energy*, 940 F.3d at 1133.  In addition, because the form distribution contracts

8    Monster used with distributors to assign exclusive territory contained an arbitration provision

9    designating JAMS Orange County as its arbitrator, JAMS Orange County had administered 97

10   arbitrations for Monster over the prior five years.  *Id.* at 1136.  That information was, likewise, not

11   disclosed to both sides of the *Monster Energy* arbitration.

12   The Ninth Circuit considered whether those undisclosed facts created "a reasonable

13   impression of partiality."  The Ninth Circuit asked two questions:  (i) was the arbitrator's

14   ownership interest in the arbitration organization sufficiently substantial; and (ii) had the

15   arbitration organization and the party compelling arbitration to the arbitration organization

16   engaged in non-trivial business dealings prior to the arbitration.  *See id.* at 1136 ("Our inquiry is

17   thus two-fold: we must determine (1) whether the Arbitrator's ownership interest in JAMS was

18   sufficiently substantial, *and* (2) whether JAMS and Monster were engaged in nontrivial business

19   dealings." (emphasis in original)).  If the answer to both of those questions is affirmative, "then

20   the relationship required disclosure, and supports vacatur."  *Id*.

21   In *Monster Energy*, the panel affirmatively answered the first question, because as a

22   co-owner of JAMS, the arbitrator had a right to a portion of profits from all of JAMS' arbitrations,

23   not just those that he personally conducts.  This was deemed to be "substantial," as it "greatly

24   exceeded" the general economic interest that all JAMS neutrals naturally have in the

25   organization.[6]  *Id.*  The panel affirmatively answered the second question as well, finding that the

26   

_____

27   [6] In *Monster Energy*, the Ninth Circuit noted that according to the record there, about one-third of
JAMS neutrals are owner-shareholders.  *Monster Energy*, 940 F.3d at 1130, n. 2.  According to the

28   disclosures here, just under 25% of JAMS neutrals are owner-shareholders.  McFarlane Decl.,
Exh. 41 at 2.

rate at which Monster had compelled arbitrations before JAMS in the prior five years was

non-trivial, regardless of the exact profit-share that the arbitrator obtained from those prior

arbitrations. *Id.*[7]  Under those circumstances, and as "[a]n arbitrator has a duty to investigate and

disclose potential conflicts," the arbitrator in *Monster Energy* had a duty to disclose both his

ownership interest in JAMS and the extent of JAMS' business dealings with Monster. *Id.* at 1135

(internal citation omitted).  The *Monster Energy* panel emphasized that its holding was limited and

required disclosures so that arbitration participants would be able to make "informed decisions."

"Once armed" with the disclosed information, "and the answers to any other inquiries the parties

may wish to pose as a result of knowing that information, the parties can make their own informed

decisions about whether a particular arbitrator is likely to be neutral." *Id.* at 1137; *see also id.* at

1138 ("These disclosures are particularly important for one-off parties facing 'repeat players.'").

## DISCUSSION

The only ground that could prevent confirmation of the arbitration award as sought by

LS&Co., and conversely the only ground that could support vacatur sought by Aqua, is whether

Judges Ware and Brazil's ownership interests in JAMS rise to the level of evident partiality

considering the level of business JAMS has conducted with LS&Co..  Aqua argues that analyzing

the two *Monster Energy* questions, the award must be vacated following the rationale of that case.

Aqua Mot. to Vacate [Dkt. No. 108] at 5.  LS&Co. counters that the facts regarding both the

inception of the arbitration and the nature of the interests of the members of the JAMS panel here

in light of the trivial amount of dealings between LS&Co. and JAMS, make the concerns

expressed in *Monster Energy* as well as its holding inapposite.  LS&Co. Mot. to Confirm [Dkt.

No. 101-1] at 9, 10, 12.

## I.     PRE-ARBITRATION DISCLOSURES AND BACKGROUND IN THIS CASE

As an initial matter, LS&Co. argues that significant distinctions between the facts of how

this case ended up before JAMS and the facts in *Monster Energy* make that case's holding

---

[7] The *Monster Energy* panel also reaffirmed that "'long past, attenuated, or insubstantial connections between a party and an arbitrator' do not support vacatur based on evident partiality." 940 F.3d. at 1135 (quoting *New Regency Prods., Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101, 1110 (9th Cir. 2007)).

United States District Court
Northern District of California

inapposite.  Here, LS&Co. opposed arbitration altogether, unlike in *Monster Energy* where the party compelling arbitration was the one with the undisclosed amount of significant business with JAMS.  In addition, but likewise as significant, it was Aqua that objected to AAA in Chicago and it was Aqua who wanted to change the arbitral forum that led to this matter being at JAMS.  LS&Co. contends that given these differences, the bias concerns at play in *Monster Energy* — undisclosed potential bias in favor of repeat-player Monster — are wholly absent here.  LS&Co. also points out that the disclosures here about the Panelists and counsel's prior involvement with LS&Co. — that Judge Ware was a mediator in a LS&Co. matter (*Icon Laser Solutions v. Levi Strauss & Co.*, in which LS&Co. was represented by its current lead counsel at Hanson Bridgett), and that Mr. Brainerd had also served as a mediator in a case involving LS&Co.'s counsel at Hanson Bridgett[8] — were far more extensive than in *Monster Energy* and yet Aqua did not object to Judge Ware (or JAMS generally) after those disclosures were made.  LS&Co. Mot. to Confirm at 12–16.

Aqua responds that these facts are wholly irrelevant and that *Monster Energy* imposes a straight-forward requirement of full disclosure in all cases to avoid an impression of evident partiality.  Aqua's Reply ISO Mot. to Vacate at 3–4.  I disagree.  These distinguishing facts are significant and relevant, even if not determinative.  The focus of the *Monster Energy* panel's opinion is the necessity of disclosing potential sources of bias (partiality) to allow parties utilizing arbitral forums or specific neutrals to make informed choices.  A fully informed choice is *particularly* relevant where there are "repeat-players" forcing one-time players into arbitration with a specific entity (as Monster was in mandating arbitration before one specific JAMS office, which resulted in JAMS Orange County handling 97 arbitrations in the prior five years).  The *Monster Energy* panel itself noted that "[t]hese disclosures are particularly important for one-off parties facing 'repeat players.'"  *Monster Energy*, 940 F.3d at 1138.  The fact that LS&Co. objected to arbitration and Aqua not only sought it but affirmatively chose JAMS over the pre-selected AAA, are key distinguishing facts that may not be dispositive on their own but

---

[8] McFarlane Decl., Exh. 15, at 17, 20–21; Exh. 16, at 13–14.

United States District Court
Northern District of California

1    support my conclusion that vacatur is not appropriate here.

2    **II.    JUDGES WARE AND BRAZIL'S OWNERSHIP INTERESTS IN JAMS ARE**

3    **SUFFICIENTLY SUBSTANTIAL**

4            Turning to the first question, this case is analogous to *Monster Energy*.  Judge John W.

5    Kennedy (Ret.) had an ownership interest in JAMS along with one-third of the other neutrals at

6    JAMS.  The *Monster Energy* panel concluded that alone was sufficiently substantial.  *Monster*

7    *Energy*, 940 F.3d at 1136 ("This ownership interest—which greatly exceeds the general economic

8    interest that all JAMS neutrals naturally have in the organization—is therefore substantial.").

9    Here, Judges Ware and Brazil are likewise both "owner panelists" of JAMS who each "have an

10   equal share ownership interest" in JAMS.  Declaration of James L. Michaels ISO Aqua Oppo. to

11   Mot. to Confirm ("Michaels Decl.") [Dkt. No. 107] Exhs. G–H.

12           The parties make arguments about the amount of profit Judges Ware and Brazil stood to

13   gain from being owner panelists of JAMS and how this might have influenced their decision in

14   this arbitration.  *See* Aqua Mot. to Vacate at 6; LS&Co.'s Reply ISO Mot. to Confirm [Dkt. No.

15   101] 4.  LS&Co. points out that here, JAMS disclosed that it has "approximately 400 neutrals on

16   its panel, and a little over one quarter of JAMS neutrals have an equal ownership share in the

17   company," as well as the fact that Judges Ware and Brazil both "never received a profit

18   distribution of more than .1% of JAMS total revenue in a given year."  Michaels Decl., Exh. G.

19           However, these additional facts do not mean Judges Ware and Brazil's interests in JAMS

20   are not as "substantial" as Judge Kennedy's.  *Monster Energy* considered only whether the

21   ownership interests held by the arbitrators in the arbitration organization created a financial

22   incentive significantly greater than that of a non-owning arbitrator.  That is satisfied here as it was

23   satisfied in *Monster Energy*.  On this record, Judges Ware and Brazil are among the 25% of

24   neutrals whose ownership interest "greatly exceeds" the general economic interest of the other

25   75% of JAMS neutrals and, therefore, is substantial under *Monster Energy*.

26           However, that conclusion is not itself dispositive.  Under *Monster Energy* there must also

27   be non-trivial undisclosed prior dealings between the parties to raise an appearance of evident

28   partiality.

United States District Court
Northern District of California

1    **III.     LS&CO. AND JAMS' BUSINESS DEALINGS**

2             Turning to the second *Monster Energy* question, which is the heart of the dispute between

3    LS&Co. and Aqua, I conclude that JAMS' conduct of one closed court reference and six

4    mediations with LS&Co. over the nine years prior to the commencement of this arbitration[9]

5    (where only one closed court reference and one disclosed mediation occurred in the five years

6    prior) is trivial.  That level of business does not, given the significant but diffuse ownership

7    interests that Judges Ware and Brazil held in JAMS, raise a "reasonable impression of partiality"

8    requiring vacatur.

9             **A.       The Nature of the LS&Co. Matters Handled by JAMS**

10            The first significant distinction between this case and *Monster Energy* is an obvious one:

11   in *Monster Energy*, Monster had — pursuant to its form distribution agreements — forced

12   *arbitration* to JAMS Orange County 97 times in the five years prior to the Monster arbitration.  In

13   almost twice that time (almost ten years instead of five), there was only one closed court reference

14   and only six mediations handled by JAMS for LS&Co.  McFarlane Decl., Exh. 41 at 4; McFarlane

15   Decl., Exh. 42 at 8.[10]  And mediations are significantly different than forced or even agreed-to

16   arbitrations because, as LS&Co. points out, a mediator's goal is to get agreement between two

17   sides to resolve a matter whereas an arbitration is submitting a dispute for unilateral resolution by

18   the arbitrator or arbitral panel.  Arbitrations often take longer than mediations, so the arbitral

19   forum earns more fees from arbitrations than typical mediations.  These distinctions mean that

20   repeat arbitrations are more significant and repeat mediations are more trivial when considering

21   potential partiality.

22

23   _____

     [9] Aqua argues, in a footnote without case support, that Judge Ware or JAMS inappropriately failed

24   to disclose that Judge Ware presided over *Levi Strauss & Company, et al. v. Bargains Avenue,
     Incorporated*, 10-CV-05342-JW (N.D. Cal. Sept. 1, 2011), a federal action in which LS&Co. was

25   a party that occurred during the disclosure period provided by JAMS.  Aqua's Oppo. to Mot. to
     Confirm at 13, n. 3.  However, Aqua has not shown how this case, handled when Judge Ware was

26   on the federal bench, demonstrates any possible bias.

27   [10] Aqua does not dispute these numbers but does contend that the closed court reference was an
     arbitration.  Aqua Mot. to Vacate at 6.  For purposes of resolving the motions, I will assume that

28   the closed court reference was akin to an arbitration.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Aqua attempts to downplay these distinctions, pointing out that under *Monster Energy* and

2    prior Ninth Circuit cases, the broad concept of "prior business" dealings is the relevant focus, not

3    just arbitrations.[11]  I agree, but that just highlights the importance of analyzing the details of the

4    exact business relationships at issue in determining whether disclosure was required.  For

5    example, in *Schmitz v. Zilveti*, 20 F.3d 1043, 1049 (9th Cir. 1994), evident partiality was found

6    where the arbitrator was a partner at a law firm that had represented the parent company of one of

7    the arbitrating parties in nineteen matters over 35 years.  Several courts, including the *Schmitz*

8    court, have declared "that representation of a parent corporation is likely to affect impartiality or

9    may create an appearance of partiality in the lawyer's representation of dealings with a

10   subsidiary."  *Id.* at 1049 (internal citations omitted).  While the *Schmitz* court does not explain

11   why that relationship creates an impression of partiality, it is obvious.  First, much like a JAMS

12   shareholder, a law firm partner receives profits from the work of the entire firm, not only his own.

13   A long-standing, profit-creating relationship with a client of the arbitrator's law firm creates a

14   reasonable impression of partiality.  Second, the attorney-client relationship imposes client fidelity

15   requirements (especially where the relationship is long-standing) and those also raise partiality

16   concerns.  Here, considering the nature of the specific business matters between LS&Co. and

17   JAMS, it is appropriate to recognize the distinction between arbitrations and mediations, given the

18   different types of financial incentives involved and the control over the parties to the dealings over

19   the eventual outcome (*e.g.*, agreed settlement versus imposed arbitration decision).

20       **B.    The Amount of Prior Business Dealings**

21       Turning to the key dispute in this case, Aqua argues that on this record — one closed court

22   reference and six mediations over almost ten years — LS&Co. and JAMS had sufficient,

23   non-trivial business dealings to require vacatur.  While *Monster Energy* considers 97 arbitrations

24   before JAMS as clearly "non-trivial" and implicating partiality, Aqua argues that *Schmitz v.*

25   *Zilveti*, 20 F.3d 1043 demonstrates that a lower volume of dealings creates a risk of partiality.

26

27   ──────────────

28   [11] Therefore, I do not find persuasive LS&Co.'s point that the *Monster Energy* court did not
     discuss the seventeen mediations Monster had before JAMS in the same period as its arbitrations.
     LS&Co.'s Reply at 6.

United States District Court
Northern District of California

Aqua Mot. to Vacate at 8–9.  In *Schmitz*, the Ninth Circuit vacated an arbitration award for evident partiality because the arbitrator did not disclose his law firm had represented the parent company of one party in "at least nineteen cases during a period of 35 years."  *Schmitz*, 20 F.3d at 1044, 1049 ("Given Conrad's constructive knowledge and the presence of the conflict, Conrad's failure to inform the parties to the arbitration resulted in a reasonable impression of partiality . . . . Conrad's evident partiality warrants vacatur of the arbitration award in this case.").  Using "math" and taking the cases and issues presented at parity, Aqua argues that under *Schmitz* four matters over nine years must be considered non-trivial.[12]  Aqua extrapolates that because JAMS handled six matters for LS&Co. in the nine years preceding this arbitration, the business here must be also considered non-trivial.  Aqua Mot. to Vacate at 8–9.  But the analysis is not so simplistic.  Aqua's math is unpersuasive because the business dealings in *Schmitz* are not comparable to the ones here. Considering the nature of the matters handled by JAMS, I conclude that six mediations (where the financial incentives are lower) and one arbitration over the course of nearly ten years is trivial. That sporadic and limited business is nowhere near as significant as the dealings in *Monster Energy* (97 repeat-player arbitrations forced by a form contract) nor is it akin to materially different concerns addressed in *Schmitz* (considering both the financial incentives and fidelity concerns created by a long-term attorney-client relationship).[13]

Aqua has not met its burden to show that LS&Co. and JAMS had non-trivial business dealings that should have been disclosed before the arbitration began.

---

[12] Aqua contends that when the nineteen matters discussed in *Schmitz* are divided equally over the thirty-five years examined, the arbitrator's law firm would have represented the parent company four times in any nine year period.  Aqua Mot. to Vacate at 8–9.

[13] In a footnote, and without citation to any case law, Aqua contends that the JAMS' disclosures regarding LS&Co. were insufficient to demonstrate "non-triviality" because "JAMS has still not issued disclosures of any kind for other entities within the "same corporate umbrella" as Levi's. Further, not all arbitrations and mediations are created equal, and JAMS has not disclosed dollar figures involved in the past work they have done with Levi's."  Aqua's Oppo. to Mot. to Confirm at 6.  Aqua could have sought to compel this information but, apparently, did not.  *Compare Monster Energy*, 940 F.3d at 1133 (the party seeking vacatur served JAMS with a subpoena and moved to compel JAMS' response).  I need not address these speculative arguments.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

The Panel's Corrected Final Award is final and unambiguous.  Considering that LS&Co. did not force Aqua into arbitration before JAMS, the trivial nature of the matters handled by JAMS concerning LS&Co. in the almost ten years preceding the arbitration, and the undisclosed nature of Judges Ware and Brazil's interest in JAMS, "a reasonable impression of partiality" was not created and vacatur is not required.

LS&Co.'s motion to confirm the Award is GRANTED.  Aqua's motion to vacate is DENIED.  The Award is confirmed in full.

**IT IS SO ORDERED.**

Dated: July 20, 2020



William H. Orrick
United States District Judge

13